**No. 26-2490**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DIRECTV, LLC ET AL., *Plaintiffs-Appellees*,

v.

NEXSTAR MEDIA GROUP, INC. ET AL., *Defendants-Appellants*.

Appeal from the U.S. District Court for the Eastern District of California,
No. 2:26-cv-00976-TLN-CKD, Hon. Troy L. Nunley

## MOTION TO EXPEDITE ORAL ARGUMENT FOR EARLIEST AVAILABLE DATE AFTER BRIEFING

DARALYN J. DURIE
ELIOT A. ADELSON
CASSANDRA J. LINCOLN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

DEANNE E. MAYNARD
ALEXANDER OKULIAR
JOSEPH R. PALMORE
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-8740
DMaynard@mofo.com

*Counsel for Defendants-Appellants*

MAY 20, 2026

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................1

GOOD CAUSE EXISTS TO EXPEDITE ORAL ARGUMENT ...........................7

CONCLUSION ...................................................................................................12

Pursuant to Circuit Rule 27-12 and General Order 3.3(f), Defendants Nexstar Media Group, Inc. and TEGNA Inc. (collectively, "Nexstar") move to expedite oral argument. As a preliminary injunction appeal, this appeal is automatically entitled to a priority hearing date under Circuit Rule 34-3(3). To the extent that priority status does not already ensure scheduling for the Court's earliest available argument date following the completion of briefing, Nexstar makes this motion seeking such scheduling. Specifically, Nexstar seeks an argument date in August 2026—shortly after the reply brief is filed on July 8, 2026—or as early as is practicable for the Court. Expedited argument is particularly warranted here, and should not overly burden the Court, because this appeal seeks targeted and urgent relief: narrowing of the overbroad injunction that, with each passing day, harms the very assets it purports to protect and that runs in favor of parties that lack standing.

The transcript of the district court proceedings has been prepared and is included in the excerpts of record filed concurrently with this motion, as is Nexstar's opening brief.

## BACKGROUND

Nexstar's opening brief lays out the full factual and procedural background of this case.

Nexstar is a local television broadcaster that creates or licenses news and programming. Opening.Br.11. It distributes that content to viewers for free over

the air and through various digital applications. Opening.Br.11. Satellite, cable, and streaming companies—known as multichannel video programming distributors ("MVPDs"), like DIRECTV—repackage Nexstar's free over-the-air content and sell it to their subscribers as part of bundles of television content. Opening.Br.7. Nexstar's local broadcast stations have provided reliable local news and community outreach for decades, winning over 500 awards for excellence in local reporting and programming in 2025 alone. Opening.Br.11. Nexstar "incurs great expense" to provide this local news for free to everyone, whether or not they subscribe to any service. Opening.Br.11. Many of Nexstar's stations are Big-Four stations: local stations affiliated with one of the four national television networks that offer both local and national content. Opening.Br.6.

Like other local broadcasters, Nexstar faces enormous challenges in the competitive modern media landscape. A rapidly expanding universe of streaming options provided by some of the world's largest and most well-resourced technology and media companies are pulling viewers and money away from Nexstar's local stations at an increasing pace, while the cost of Nexstar's content—including the reverse-compensation fees Nexstar pays to national television networks—continues to skyrocket. Opening.Br.9-11. To survive and succeed in today's hypercompetitive media industry and continue offering cost-intensive, high-quality content, including local journalism, Nexstar must innovate and scale up.

2

A key step in that path was the acquisition of TEGNA, another local broadcaster facing the same pressures confronting all local broadcasters today. Before the transaction, TEGNA had publicly announced $90-$100 million in cost reductions that would eliminate newsroom and support positions, consolidate station operations and management, and rely on technologies like AI automation. Opening.Br.12. The acquisition of TEGNA gives Nexstar ownership of 259 television stations across 132 of the country's 210 designated market areas ("DMAs"), equating to less than 15% of the 1,777 full-power stations nationwide. Opening.Br.12. It resulted in Nexstar's ownership of more than one Big-Four station in just 31 of those 210 DMAs ("Big-Four overlap DMAs"); in 20 DMAs where TEGNA operated full-power stations, the acquisition did not create any such overlap DMAs. Opening.Br.13.

The transaction was reviewed and cleared by the Federal Communications Commission and the U.S. Department of Justice, the federal agencies empowered to oversee the nation's telecommunications resources and infrastructure and to enforce its antitrust laws. Opening.Br.13-16. The FCC approved the deal after nearly four months' review, finding the transaction would "serve the public interest" by "enabling" Nexstar and TEGNA "to expand the production of local news and information" and maintain broadcast's competitive position. Opening.Br.13-14. The FCC found that, without the transaction, competition from digital and streaming

3

services would "render[] Nexstar and TEGNA unable to compete and maintain the same level of investment in the essential local content upon which their communities rely," and that "core revenue" for local Big-Four stations in the overlap DMAs was "stagnant or falling" such that "[i]nsisting on continued separate ownership eventually will be the death of at least one news organization in these markets." Opening.Br.43. The FCC agreed that combining Nexstar with TEGNA "provides the only hope to achieve the scale needed to sustain operations." Opening.Br.14.

The FCC conditioned approval on enforceable commitments from Nexstar to expand its investment in local news and programming, and required Nexstar to offer MVPDs an extension of expiring retransmission agreements at existing rates at least through November 30, 2026. Opening.Br.15. DOJ likewise conducted a searching review—involving multiple requests, millions of documents, large volumes of data, and economic and marketplace analyses—and terminated its review without conditions. Opening.Br.16. After the transaction closed, Nexstar began integrating TEGNA's assets, staff, and operations—actions that cannot be paused without harming Nexstar and former TEGNA. Opening.Br.16.

This litigation arose through the coordinated filing of antitrust complaints by DIRECTV and various States. Plaintiff DIRECTV is a private equity-owned video-content distributor that buys the rights to retransmit Nexstar's and TEGNA's free signals and then charges subscribers to access those signals as part of DIRECTV's

4

video packages. Opening.Br.3, 17. Plaintiffs did not allege harm based on Nexstar and TEGNA's nationwide integration. Instead, DIRECTV alleged the transaction would allow Nexstar to raise the retransmission rates it charges DIRECTV for a license to retransmit certain stations' signals in the 31 Big-Four overlap DMAs, and would degrade the local news on those stations. Opening.Br.17. State Plaintiffs, whose States contain only 11 of those 31 localities, parroted DIRECTV's allegations and alleged that MVPD subscribers in those DMAs might suffer if MVPDs like DIRECTV choose on their own to raise their subscribers' rates. Opening.Br.17. Neither DIRECTV nor State Plaintiffs alleged harms stemming from the integration of TEGNA's non-Big-Four stations, the integration of TEGNA's Big-Four stations outside the overlap DMAs, or the integration of other TEGNA assets, products, and operations. Opening.Br.17-18.

Despite Plaintiffs' narrow, locality-based theory of harm, the district court entered a preliminary injunction on April 17, 2026, that was impermissibly overbroad. It issued a nationwide hold-separate order that derails Nexstar and TEGNA's entire corporate integration. The order enjoins "all actions relating to integration and consolidation of Nexstar and TEGNA"; requires "separate management" for TEGNA; precludes Nexstar from "influenc[ing] the management of the held-separate TEGNA business unit"; requires Nexstar to "hold separate all assets, rights, and licenses acquired as a result of the Transaction"; and requires

5

Nexstar to maintain preexisting levels of "station operations, staffing, promotional, advertising, sales, technical assistance, marketing, and merchandising support" for all acquired TEGNA stations. Opening.Br.21.

The injunction blocks integration of non-Big-Four stations, which Plaintiffs admit have no bearing on Big-Four retransmission fees or Big-Four local news. It blocks integration of Big-Four stations outside the overlap DMAs, where Plaintiffs do not allege the transaction will increase Nexstar's leverage or harm local news at all. It reaches former TEGNA business segments unrelated to retransmission consent or local news, including TEGNA's digital advertising platform Premion. And it reaches critical corporate functions—such as finance, accounting, and IT— far afield from retransmission-consent negotiation or decisions regarding the production of local news in the Big-Four overlap DMAs. *See* 1-ER-49-51. The district court addressed Nexstar's arguments about the scope of the injunction only with the unexplained conclusion that an injunction "tailored to the local DMAs" would "put any possible divestiture remedy at risk." 1-ER-40.

Nexstar timely appealed on April 21, 2026. This case is being briefed under this Court's expedited preliminary injunction briefing schedule and briefing will be complete on July 8, 2026.

## GOOD CAUSE EXISTS TO EXPEDITE ORAL ARGUMENT

Under this Court's rules, this preliminary injunction appeal is entitled to priority treatment. Circuit Rule 34-3(3); *see also* 28 U.S.C. §1657(a) (providing for priority treatment of preliminary injunction appeals). To the extent such treatment does not already so provide, the oral argument in this appeal should be expedited so that it will be scheduled for the Court's earliest available date following the completion of briefing, preferably in August 2026.

Good cause to expedite exists here. Every day the injunction remains in effect, it inflicts severe and compounding harm on Nexstar, former TEGNA, and the public they serve. The injunction requires two commonly owned companies to maintain artificial operational separation despite common ownership, requiring duplicative functions, delaying strategic initiatives, and blocking coordination across critical corporate functions such as advertising sales, management, local news production, distribution, and business strategy. Opening.Br.40. This prevents Nexstar from executing the very efficiencies and public-interest benefits that the FCC found essential to sustaining local broadcast journalism. Nexstar has already lost tens of millions of dollars in unrecoverable operational efficiencies, a figure growing by the day. Opening.Br.40.

The hold-separate order creates prolonged uncertainty that increases the likelihood that high-performing employees will leave, taking their institutional

7

knowledge and relationships with them. Opening.Br.41. The order is actively hampering Nexstar's ability to recruit on-air local-news talent and other critical personnel, and sowing confusion among MVPDs about which retransmission agreements govern former TEGNA stations—confusion that will only intensify as agreements expire and must be renegotiated. Opening.Br.41. The same uncertainty undermines advertiser relationships during critical revenue cycles: midterm-elections and fall programming advertising cycles are rapidly approaching. Opening.Br.41. These harms will hamper Nexstar's ability to compete and grow in today's media environment. Opening.Br.41.

The injunction also threatens the very TEGNA assets it purports to protect. Before the injunction, TEGNA had publicly announced $90-$100 million in cost reductions that would eliminate newsroom and support positions, consolidate station operations and management, and develop technologies like AI automation. Opening.Br.41-42. Now, while TEGNA is unable to benefit from Nexstar's resources and assets, it is simultaneously prevented from undertaking those critically needed cost reductions. Opening.Br.42. Indeed, TEGNA is prohibited from changing its pre-existing staffing, operations, sales, and other corporate functions in *any* manner—meaning TEGNA cannot exercise its independent business judgment to survive while awaiting trial. Opening.Br.42.

8

That straightjacket on TEGNA risks profound harms. As the FCC found, the media landscape has "shifted dramatically": streaming and other ubiquitous digital platforms, operated by some of the world's largest technology companies, have captured both viewers and revenue, while local-television advertising revenue has declined and the costs of producing and acquiring video content have skyrocketed. Opening.Br.42. Against that backdrop, the FCC agreed that combining Nexstar with TEGNA "provides the only hope to achieve the scale needed to sustain operations," and that "core revenue" for local Big-Four stations in the overlap DMAs was "stagnant or falling" such that "[i]nsisting on continued separate ownership eventually will be the death of at least one news organization in these markets." Opening.Br.43. Before the district court, Plaintiffs never disputed these findings, which were made by an expert agency that spent months reviewing the transaction and determined the conditions needed for approval. Opening.Br.43. The hold-separate order thus locks TEGNA stations into an outdated structure that was already under substantial strain, making it more likely TEGNA will not survive while waiting for the transaction to be vindicated.

The injunction further deprives the public of concrete benefits the transaction was approved to deliver. Plaintiffs and the district court ignored a basic, undisputed fact: Nexstar provides free, over-the-air local broadcast service, including local news viewers can access regardless of MVPD rates. Opening.Br.43-44. The

9

transaction will allow Nexstar to create additional local news broadcast on stations that had either minimal or no local news presence; provide acquired TEGNA stations access to Nexstar's Washington, D.C. news bureau and 24 state-capital news bureaus; accelerate deployment of state-of-the-art broadcast infrastructure at acquired TEGNA stations; expand local news and programming as required by Nexstar's enforceable commitment to the FCC; and integrate TEGNA's Premion platform to benefit local and regional advertisers. Opening.Br.44. The public is not served by keeping these concrete benefits on hold while Plaintiffs litigate over what is, at bottom, a rate-bargaining dispute between sophisticated commercial parties.

Since issuance of the injunction, the harms Nexstar predicted in district court have materialized and are accelerating. All these harms injure not just Nexstar and the TEGNA assets the district court sought to protect, but also the local news Nexstar creates and disseminates for free to the public. If the injunction is left in place in its current breadth, those harms will continue to cause and deepen irreparable injury as Nexstar awaits trial—a trial Plaintiffs' own counsel predicted would not occur before 2027. 2-ER-175.

Expedited argument will allow the Court to minimize the period during which the overbroad injunction inflicts that irreparable harm while Nexstar awaits trial on the merits—where the full evidentiary record will vindicate this transaction and Nexstar will defeat Plaintiffs' claims. Expedited treatment is particularly

10

appropriate and not burdensome given the discrete issues raised on appeal. Although Nexstar vigorously disputes the propriety of any injunctive relief, to obtain urgent relief as soon as possible, it is appealing only two critical aspects of the district court's order: the scope of the injunction and State Plaintiffs' lack of standing. Those targeted issues can be reviewed and addressed quickly by this Court.

In addition, good cause for expedited argument exists because Nexstar's appeal argues that State Plaintiffs lack standing and therefore cannot obtain or enforce any preliminary injunction. Opening.Br.46-56. Unlike the federal government, the States cannot sue under the relevant federal antitrust law as sovereign enforcers; they can only sue (if at all) as private parties. State Plaintiffs thus must establish both *parens patriae* and antitrust standing, and they cannot do so here: they allege (at most) speculative, remote harms that are outside the only market they define. Opening.Br.46-56. The actual participants in the business-to-business market they allege are sophisticated commercial parties that can sue for themselves, as DIRECTV's parallel and first-in-time suit confirms. Opening.Br.49-50. Allowing State Plaintiffs to remain in this case moving forward would permit parties that lack standing to enforce the preliminary injunction, and to seek other relief beyond what DIRECTV may pursue. That is impermissible. *Trump v. CASA*, 606 U.S. 831, 851, 861 (2025). Dismissing State Plaintiffs as early as possible will

11

also streamline this case, which should proceed to an expeditious trial on DIRECTV's claims alone.

Nexstar reached out to counsel for plaintiffs-appellees DIRECTV, LLC and State Plaintiffs for their position. DIRECTV states that because "General Order 3.3.f already provides for assignment of an expedited case," it does not believe further relief is necessary. State Plaintiffs similarly state that they do not believe further relief is necessary. General Order 3.3(f) provides that when an appeal is expedited for good cause under Rule 27-12, it "shall be assigned" to "the next available panel in the administrative unit where the case would normally be heard and where the panels sitting for that calendar have not yet been assigned their cases." That General Order supports Nexstar's request, which seeks argument at the earliest possible opportunity on the basis of good cause. And Plaintiffs have no basis to complain about such expedition of oral argument. They pressed for, and received, extreme expedition in the district court—and obtained an overbroad preliminary injunction that inflicts harm on Nexstar with each passing day.

## CONCLUSION

Nexstar urges the Court to set oral argument for the earliest available date following the conclusion of briefing, preferably in August 2026.

Dated: May 20, 2026

DARALYN J. DURIE
ELIOT A. ADELSON
CASSANDRA J. LINCOLN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

Respectfully submitted,

/s/ Deanne E. Maynard

DEANNE E. MAYNARD
ALEXANDER OKULIAR
JOSEPH R. PALMORE
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-8740
DMaynard@mofo.com

*Counsel for Defendants-Appellants*

13

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitations and typeface and type style requirements of the Federal Rules of Appellate Procedure and 9th Circuit Rules because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and does not exceed 20 pages, excluding the parts exempted by the Rules.

Dated: May 20, 2026

/s/ Deanne E. Maynard
Deanne E. Maynard

MF-370162881