August 12, 2026

**Via ACMS**

Molly Dwyer
Clerk of Court
United States Court of Appeals for the Ninth Circuit
James R. Browning Courthouse
95 Seventh Street
San Francisco, California 94103

Re: Supplemental Authority in *DirecTV, LLC v. Nexstar Media Group, Inc.*, No. 26-2490, to be calendared for argument November 17, 2026 (Pasadena)

Dear Clerk Dwyer:

Pursuant to Rule 28(j), Plaintiffs-Appellees submit the August 5, 2026 order of the District Court (the "Order") granting their motion to clarify the preliminary injunction on appeal to this Court.

The preliminary injunction requires TEGNA to remain a separate, independently managed entity, bars Nexstar from influencing TEGNA's management, and prohibits sharing competitively sensitive information. In the Order, the court explained that the injunction prohibits Nexstar-affiliated personnel from serving on TEGNA's Board, and it found that Nexstar's installation of its own senior executives on TEGNA's board violated the injunction. Order 4-8. The court called this "conduct … brazen" and found that Appellants' failure to inform

the court of it reflected a "lack of candor" toward the court. Order 7-8. The court imposed measures for compliance monitoring, reporting, and discovery. Order 11-13.

Appellees submit the Order both to inform this Court of the state of proceedings below and because it is relevant to Appellees' arguments in two respects. *First*, the Order underscores how Appellants' hypothetical conduct-specific and DMA-by-DMA alternative injunctions would be inadequate and difficult to administer. *See* States' Br. 41-42; DIRECTV Br. 39-41, 51-53. Such alternatives would require constant line-drawing and novel management structures separating subgroups of TEGNA stations or functions—all potentially leading to disputes about authority, budgets, reporting, recusal, and access to competitively sensitive information. The preliminary injunction uses TEGNA's preexisting company-wide reporting structure, yet *even within that comparatively straightforward framework*, Appellants adopted a "hyper-technical" interpretation under which Nexstar executives dominated TEGNA's Board. Order 6-8. The District Court's need to authorize compliance reporting, monitoring, and discovery to police a comparatively straightforward injunction shows just how difficult the supervision of more intricate alternatives could prove.

*Second*, the Order confirms that Appellants' fact-specific operational concerns or proposed injunction modifications belong before the District Court; they are not a basis for narrowing the injunction on appeal. *See* States' Br. 44-46; DIRECTV Br. 59-60. Just as that court had instructed Appellants to seek relief if they needed additional authority over TEGNA's operations (*see* Order 7), it has now clarified this applies to the appointment of directors with material Nexstar relationships (Order 13).

Yours truly,

/s/ Emily C. Curran

Emily C. Curran
Deputy Attorney General
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
*Counsel for Appellee The State of California*

/s/ Benjamin J. Horwich

Benjamin J. Horwich
MUNGER, TOLLES & OLSON LLP
*Counsel for Appellee DIRECTV, LLC*

cc: Counsel of Record, via ACMS

Attachment

## Certificate of Compliance

This letter complies with the word limit of Fed. R. App. P. 28(j) because it contains 349 words as measured by the word-processing program used to prepare it.

This letter complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in Times New Roman 14-point typeface.

/s/ Benjamin J. Horwich

Benjamin J. Horwich

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: NEXSTAR-TEGNA MERGER LITIGATION | No. 2:26-cv-00976-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Plaintiffs'[1] Motion for Clarification of the Preliminary Injunction. (ECF No. 269.) Defendants Nexstar Media Group, Inc. ("Nexstar") and TEGNA Inc. ("TEGNA") (collectively, "Defendants") filed an opposition. (ECF No. 279.) Plaintiffs filed a reply. (ECF No. 283.) Defendants filed a sur-reply. (ECF No. 286-1.) For the reasons set forth below, the Court GRANTS Plaintiffs' motion and clarifies that its April 17, 2026 preliminary injunction (ECF No. 172) prohibits current and former Nexstar officers, employees, directors, consultants, or other affiliated personnel from serving on the Board of Directors for TEGNA.

///

///

[1] The instant motion is brought by DIRECTV, LLC ("DIRECTV") and the State of California, State of Colorado, State of Connecticut, State of Illinois, State of Indiana, State of Kansas, Commonwealth of Massachusetts, State of New York, State of North Carolina, State of Oregon, Commonwealth of Pennsylvania, State of Vermont, and Commonwealth of Virginia (collectively, "Plaintiff States"). The Court refers to all these entities collectively as "Plaintiffs."

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The instant action arises from Nexstar's allegedly unlawful acquisition of TEGNA. On April 17, 2026, this Court issued a preliminary injunction requiring Nexstar to preserve TEGNA as a separate and independent entity during these proceedings. (ECF No. 172.) In early May 2026, public reports surfaced that Nexstar was not maintaining TEGNA as an independently-run company. (ECF No. 269 at 19.) On May 7, 2026, Nexstar CEO Perry Sook ("Sook") told investors the following:

> If you go back to the interim operating covenants, and it's now public in the order as well, they're primarily financial transactions above a certain size would have to be approved by the Board of TEGNA, which is comprised of Nexstar executives, and Nexstar management team, and that's been approved by the courts that – and so – and we have the ability to appoint management inside of TEGNA. And so I think all of those things together are the governance that will guide us during this whole separate period. And so they operate as a subsidiary. We can have conversations with them, the executives running the entity report to the Board.

(ECF No. 269-2 at 26.) Further, Bloomberg reported on May 22, 2026, that although some TEGNA management remained, they served in only "limited roles," lacked "authority to communicate with employees," and Nexstar "must make" decisions directing TEGNA-owned stations. (*Id.* at 7–11.)

Plaintiffs requested information regarding Defendants' compliance with the preliminary injunction on May 22, 2026. (ECF No. 269-2 at 2–6.) On June 12, 2026, Defendants disclosed that the five-member TEGNA Board is comprised exclusively of current and former Nexstar executives, as follows: Perry Sook (Nexstar Chief Executive Officer); Michael Biard (Nexstar President and Chief Operating Officer); Lee Ann Gliha (Nexstar Executive Vice President and Chief Financial Officer); Elizabeth Ryder (Nexstar Executive Vice President, General Counsel, and Secretary to Nexstar Board of Directors); and Timothy Busch (Former President of Nexstar Broadcasting, Inc. and Nexstar consultant). (ECF No. 269 at 20; ECF No. 269-5.) Defendants also disclosed the TEGNA Board "[e]xercises governance oversight of TEGNA, including

---

[2] The Court need not recite the background facts of this case herein, as they are set forth fully in the Court's April 17, 2026 preliminary injunction Order. (ECF No. 172.)

establishing a functional governance structure, appointing TEGNA officers, and approving TEGNA budgets." (ECF No. 269 at 20; ECF No. 269-5.)

Plaintiffs assert they subsequently advised Defendants these disclosures raised serious concerns Defendants were violating the preliminary injunction, requested Nexstar executives resign from the TEGNA Board, and sought information about the Board's actions. (ECF No. 269 at 20–21; ECF No. 269-7.) Plaintiffs subsequently engaged in meet and confer with Defendants regarding this issue to no successful resolution. (ECF No. 269 at 21–23.) On July 22, 2026, Plaintiffs filed the instant motion for clarification and compliance relief. (*See id.*)

## II. STANDARD OF LAW

"A district court has discretion to clarify or modify the scope of an injunction." *Safari Club Int'l v. Bonta*, 756 F. Supp. 3d 837, 840 (E.D. Cal. 2024) (citing cases). "By clarifying the scope of a previously issued injunction, a court 'add[s] certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous.'" *Id.* (quoting *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)). Where a preliminary injunction has been appealed, the district court nevertheless retains jurisdiction to enforce the preliminary injunction and similarly retains jurisdiction to clarify the meaning of its orders. *Thakur v. Trump*, 795 F. Supp. 3d 1168, 1178 (N.D. Cal. 2025) (citing *Pub. Serv. Co. of Colo. v. Batt*, 67 F.3d 234, 238 (9th Cir. 1995)).

## III. ANALYSIS

Plaintiffs request the Court clarify the preliminary injunction does not allow current Nexstar personnel or recent former Nexstar personnel, including Nexstar contractors, to serve on TEGNA's Board of Directors. (ECF No. 269 at 24–32.) Plaintiffs also request the Court order Defendants to submit monthly reports on compliance and require expedited compliance discovery. (*Id.* at 32–33.) The Court will address each of these requests in turn.

### A. <u>Clarification of the Preliminary Injunction</u>

The parties dispute (1) whether the preliminary injunction allows Nexstar executives to serve on TEGNA's Board, (2) whether the Sarbanes-Oxley Act and Securities and Exchange Commission ("SEC") requirements and Nexstar's debt agreements require the Nexstar CEO and

CFO to serve on TEGNA's Board, and (3) whether the Court's Order authorizes the TEGNA Board's actions to date. The Court will address each of the parties' arguments in turn.

*i. Whether the Preliminary Injunction Allows Nexstar Executives to Serve on TEGNA's Board*

Plaintiffs argue the preliminary injunction does not allow Nexstar to control the TEGNA Board, as this enables Nexstar to influence management of TEGNA and obtain access to TEGNA's confidential information. (ECF No. 269 at 24–25.) Plaintiffs contend Nexstar's claim that "its reconstituted TEGNA Board" is "engaging only in activities" allowed by the preliminary injunction cannot be right, as "[d]irectors cannot discharge their duties while deliberately insulated from the information necessary to evaluate significant corporate decisions." (*Id.* at 25–26.) Plaintiffs state Nexstar has admitted the TEGNA Board approves TEGNA's budgets (and the Board even recently approved revisions to TEGNA's 2026 budget "based on a forecast provided by TEGNA's finance personnel.") (*Id.* at 26 (citing ECF No. 269-5 at 2–3; ECF No. 269-11 at 3).) Given this, Plaintiffs contend "[i]t is hard to imagine that a forecast of TEGNA's operations did not contain competitively sensitive information about its business" and therefore TEGNA is not being maintained as a "separate and distinct" entity as the preliminary injunction requires.[3] (*Id.* at 26–27.)

In opposition, Defendants argue the TEGNA Board composition is compliant with the Court's preliminary injunction as the "Order expressly permits Nexstar to carry out various functions for TEGNA, including appointing officers, taking steps to comply with Nexstar's obligations under the federal securities laws and its debt agreements, and requiring TEGNA's adherence to the Merger Agreement's interim operating covenants." (ECF No. 279 at 14–15.) Defendants submit the Order specifies that Nexstar employees or officers shall not be "TEGNA officers" but contains no similar prohibition on serving as TEGNA directors. (*Id.* at 15.) To support this argument, Defendants point to other provisions of the Order that list "directors" and

[3] Plaintiffs also assert that § 8 of the Clayton Act reinforces this conclusion, as it prohibits the same directors from sitting on the board of competitors. (*Id.* at 27.) However, the Court need not and does not address Plaintiffs' arguments about the Clayton Act, as it finds that Nexstar executives serving on TEGNA's Board violates the preliminary injunction.

"officers" as distinct categories and note the Order does not include any prohibition on Nexstar personnel serving as TEGNA's directors. (*Id.* at 15.)

The relevant portions of the Court's preliminary injunction are as follows:

> Nexstar must permit TEGNA to continue operating as a separate and distinct, independently managed business unit from Nexstar, and Nexstar must put measures in place to maintain TEGNA as an ongoing, economically viable, and active competitor. TEGNA shall have separate management that operates TEGNA in the ordinary course consistent with pre-closing practices . . .
>
> Nexstar must place and maintain internal controls and procedures to prevent the sharing of competitively sensitive information . . . [and]
>
> Nexstar must not influence the management of the held-separate TEGNA business unit.

(ECF No. 172 at 48.) The Court's Order allowed Nexstar to appoint or reappoint TEGNA officers only "to the extent necessary to permit TEGNA to fulfill its obligations under this Order," prevented Nexstar from appointing "current Nexstar employees, or former employees employed within the prior six months, as TEGNA officers," and clarified that "no TEGNA officer shall be an officer of Nexstar." (*Id.* at 50.)

A preliminary injunction "must be read in light of [its] purpose." *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1109 (C.D. Cal. 2001). The Court's Order is intended to preserve TEGNA as a separate and distinct, independently managed business unit from Nexstar. It is directly contrary to the intent of the preliminary injunction to allow Nexstar executives to serve on TEGNA's Board. Nexstar's control of the TEGNA Board will undoubtedly allow it to influence TEGNA's management and obtain access to TEGNA's confidential information.

Plaintiffs provide sufficient evidence to establish TEGNA's Board has access to confidential information. Plaintiffs cite to a TEGNA Proxy Statement that notes, prior to closing, the TEGNA Board of Directors was "actively involved in overseeing, reviewing, and guiding the Company's corporate strategy," which included "developments in [the] industry and industry positioning, opportunities for growth, multiyear strategic plans, investments and capital allocation, including M&A-related decisions[.]" (ECF No. 269 at 25 (citing TEGNA Inc., Definitive Proxy Statement at 33 (Schedule 14A) (Mar. 11, 2024)).) This Proxy Statement also

states board discussion were "regularly infused with strategic and business themes," including "presentations to the Board to facilitate a further in-depth and comprehensive discussion and review of the Company's strategic and operational plans." (*Id.*)

Defendants do not counter Plaintiffs' assertions that TEGNA's Board has influence over TEGNA management. Indeed, Defendants appear to concede the point in arguing that Nexstar should retain a majority on the TEGNA Board for the "ability to divert course if needed." (ECF No. 279 at 17.) Defendants do not respond to Plaintiffs' statement that Defendants have admitted TEGNA officers provide updates about TEGNA to Nexstar executives on TEGNA's Board, and Sook himself has stated TEGNA senior management must "report to the Board" and can "have conversations" with Nexstar executives. (*Id.* at 27 (citing ECF No. 269-11, ECF No. 269-2 at 20, 25).) Defendants also acknowledged the Board "received updates from TEGNA management" and approved "revisions to TEGNA's 2026 budget that was prepared 'based on a forecast provided by TEGNA's finance personnel.'" (*Id.* at 21, 26 (citing ECF No. 269-8 at 3, ECF No. 269-11 at 3).)

The Court also finds persuasive Plaintiffs' argument that a "TEGNA Board that approves budgets without understanding them — or abstains whenever material business issues arise — is not functioning as a genuine corporate board consistent with TEGNA's "pre-closing practices," as the preliminary injunction requires. (*Id.* at 26 (citing ECF No. 172 at 48).) Tellingly, Defendants provide no response to this assertion.

In light of the foregoing, Defendants cannot convincingly argue that having Nexstar executives serve on TEGNA's Board complies with the preliminary injunction. Defendants' hyper-technical reading that the Order does not contain a similar prohibition on Nexstar employees or officers serving as TEGNA directors is entirely disingenuous — especially given that the Order refers to officers because that is how Nexstar worded its modification request. (ECF No. 63 at 7.) It is clearly the spirit of the preliminary injunction that Nexstar executives would be prohibited from serving as not just TEGNA officers, but TEGNA directors as well. It is shocking that Defendants think installing a Board of Directors comprised primarily of Nexstar executives would not create influence over TEGNA management. This undermines TEGNA as

an independent entity and violates the preliminary injunction.

The Court previously rejected Defendants' requests to give Nexstar "management authority" over TEGNA and to permit integration at the corporate level. (ECF No. 63 at 6.) At the April 7, 2026 hearing on the preliminary injunction, Defendants sought to narrow any injunction to specific market areas rather than the corporate level. In support of their narrow proposal, Defendants raised the issue of compliance with the Sarbanes-Oxley Act and debt agreements, although they made no mention of their argument here that Nexstar executives *must* serve on TEGNA's Board. Ultimately, after hearing the parties on this issue, the Court rejected Defendants' proposal and issued its preliminary injunction requiring complete independence between the entities. However, at the hearing, the Court specifically instructed Defendants to seek relief from this Court if Defendants needed additional authority to ensure TEGNA's continued operations. Even absent this direct solicitation by the Court, if Defendants believed having Nexstar executives on TEGNA's Board was required to comply with the Sarbanes-Oxley Act and its debt agreements, they should have preemptively disclosed the Board appointments to the Court and sought permission for them to remain, just as they did in seeking permission to appoint TEGNA officers. (ECF No. 63 at 7.)

Further, Defendants have a duty of candor to the Court under California Rule of Professional Conduct 3.3, which the Eastern District of California incorporates under Local Rule 180. *See* E.D. Cal. L.R. 180(e). Through the instant motion, the Court has learned for the first time that, on the very day the motion for temporary restraining order ("TRO") was filed, three Nexstar officials were appointed to TEGNA's Board.[4] (ECF No. 279 at 6 ("As TEGNA publicly announced in an 8-K filing with the [SEC] on March 20, 2026, the post-close directors of TEGNA were Perry Sook ([CEO] of Nexstar), Lee Ann Gliha ([CFO] of Nexstar), and Rachel Morgan (then-General Counsel of Nexstar).").) Yet, Defendants never disclosed this material information to the Court — not in briefing on the TRO, not in their TRO compliance report, not

[4] It is not clear on the record when the additional Nexstar executives were appointed to TEGNA's Board. Assuming they were appointed after the Court issued its TRO, such appointments would be a direct violation of this Court's Order.

in seeking modification of the TRO, not during the preliminary injunction hearing, nor in the months following the preliminary injunction. Defendants repeatedly failed to disclose material information to this Court, declined to seek Court guidance or relief, and then publicly declared that the Court had "approved" their actions. (*See* ECF No. 269-2 at 26.) Defendants' conduct is brazen. The Court finds Defendants have failed to comply with Rule 3.3 and admonishes them for their lack of candor.

*ii. Nexstar's CEO and CFO on the TEGNA Board*

Plaintiffs assert Defendants have not identified any statutory or regulatory authority that requires Nexstar executives to serve on TEGNA's Board. (ECF No. 269 at 29.) Plaintiffs further assert the Sarbanes-Oxley Act does not require top company executives to personally review or verify every subsidiary's financial reporting. (*Id.*) According to Plaintiffs, the Act instead "requires the CEO and CFO to certify periodic reports based on disclosure controls and procedures designed to ensure that material information is collected and communicated to senior management." (*Id.* (citing 15 U.S.C. § 7241).) Plaintiffs maintain controls such as sub-certifications and representations from finance personnel, business-unit leaders, and other employees could have been implemented. (*Id.*)

In opposition, Defendants argue Nexstar's CEO (Sook) and CFO (Lee Ann Gliha ("Gliha")) must serve on TEGNA's Board to discharge Nexstar's Sarbanes-Oxley Act and related SEC reporting requirements, as they must "personally attest to the accuracy of Nexstar's financial statements and the sufficiency of Nexstar's internal controls," and have "the ability to course-correct any deficiencies in the controls." (ECF No. 279 at 16.) According to Defendants, Plaintiffs' proposed solution to rely on sub-certifications is irresponsible, as the obligations are non-delegable. (*Id.* at 16–17.) Finally, Defendants maintain Sook and Gliha must serve on TEGNA's Board to discharge Nexstar's debt agreement obligations, as they must assess and approve decisions implicating covenants contained within those debt agreements that bind Nexstar as a consolidated entity (including TEGNA). (*Id.* at 18.)

In reply, Plaintiffs maintain having Nexstar executives serve on TEGNA's Board is neither narrowly tailored nor necessary because three of the five Board members have no such

Sarbanes-Oxley Act requirements and the Act does not require executives to sit on a company's board to fulfill their obligations under the Act. (ECF No. 283 at 4–5.) Plaintiffs also assert having Nexstar executives serve on TEGNA's Board is not narrowly tailored to any reporting or debt covenant requirements because it has collateral consequences that the injunction forbids. (*Id.* at 7.)

After reviewing the parties' arguments, the Court is not persuaded that Nexstar executives must sit on TEGNA's Board to comply with its Sarbanes-Oxley Act requirements and to fulfill its debt agreement obligations.[5] The only evidence Defendants provide in support of this assertion are declarations from Nexstar's CEO and CFO concluding their Board membership is necessary. However, the Court need not credit self-serving conclusory assertions provided without citation to any such obligation, *see United States v. Bright*, 596 F.3d 683, 695 (9th Cir. 2010), particularly where Plaintiffs present alternative ways for Defendants to meet their obligations.[6] The Court finds it telling that Defendants do not contest Plaintiffs' assertion that none of the "series of the interrelated certification provisions" that Defendants cite require the CEO and CFO of a company to sit on the Board of Directors in order to fulfill their Sarbanes-Oxley Act requirements.[7] (ECF No. 283 at 5; *see also* ECF No. 286-1.) Plaintiffs also provide citation to SEC requirements — unrebutted by Defendants in their sur-reply — that the SEC "expressly disavow[s] any such

---

[5] The declaration of Defendants' expert amounts to a permissive statement rather than a mandatory one that TEGNA Board seats provide Nexstar a mechanism to carryout oversight duties, not that it is the only tool or a required one to comply with SEC obligations. (*See* ECF No. 279-18 at 5.)

[6] The Court also finds persuasive Plaintiffs' argument that a "CFO's service on [a company's] board is the exception rather than the rule." (ECF No. 283 at 6 (citing Alexander May & Bill Erlain, A Survey of Non-Independent Directors at S&P 500 Companies, Harv. Law Sch. F. on Corp. Governance (June 27, 2024), https://corpgov.law.harvard.edu/2024/06/27/a-survey-of-non-independent-directors-at-sp-500-companies ("[O]nly four of the 161 companies [surveyed] had a sitting CFO as a director."). However, without clarity on whether these companies are similarly-situated, the Court declines to base its finding on this argument.

[7] Indeed, as Plaintiffs note, "[t]ogether, these provisions establish the certification requirement, 15 U.S.C. § 7241, authorize the SEC to prescribe rules for financial reporting, 15 U.S.C. § 7262, elaborate on the form of certificate, 17 C.F.R. § 240.13a-14, affirm that certifiers must attest to the effectiveness of the company's disclosure controls and procedures and internal controls, 17 C.F.R. § 240.13a-15, and provide for criminal penalties for noncompliant statements, 18 U.S.C. § 1350." (ECF No. 283 at 5–6.)

requirement" to require the CEO and CFO sit on the Board to satisfy reporting obligations. (ECF No. 283 at 5–6 (noting the SEC's rule implementing certification requirements does "not requir[e] any particular procedures for conducting the required review and evaluation" (citing Certification of Disclosure in Companies' Quarterly and Annual Reports, 67 Fed. Reg. 57276, 57280 (Sep. 9, 2002)).) Finally, as most of Defendants' arguments relate to why Sook and Gliha must serve on TEGNA's Board, the Court finds having the three other current or former Nexstar executives sitting on TEGNA's Board to be neither necessary nor narrowly tailored.

*iii. Paragraph 11 of the Injunction and the TEGNA Board's Actions*

Plaintiffs argue Nexstar's interpretation of the preliminary injunction's language "would swallow the basic hold-separate rule embodied in the Court's Order." (ECF No. 269 at 29.) In opposition, Defendants maintain the actions TEGNA's Board has taken to date are expressly permitted by paragraph 11 of the preliminary injunction Order. (ECF No. 279 at 19.) Defendants note TEGNA's Board has reviewed and approved TEGNA's revised budget, selected a CEO, and ratified the CEO's selection of other officers, including compensation packages for most of the officers.[8] (*Id.*)

Paragraph 11(c) of the preliminary injunction states that it shall not be a violation for Nexstar to:

> take actions necessary to establish a functional governance structure for TEGNA, including appointing or reappointing officers, to the extent necessary to permit TEGNA to fulfill its obligations under this Order, provided however that Nexstar shall not appoint current Nexstar employees, or former employees employed within the prior six months, as TEGNA officers and no TEGNA officer shall be an officer of Nexstar.

(ECF No. 172 at 50.)

Here, as established previously, the Court agrees with Plaintiffs that appointing Nexstar executives as TEGNA directors does not meet the foregoing standard because such a "governance

---

[8] Defendants also assert that should TEGNA's Board encounter a situation in which it must decide an issue outside the specific functions permitted by paragraph 11, the Nexstar executives serving on the Board would recuse themselves from any such decision. (ECF No. 279 at 20.) In light of the Court's finding that Nexstar executives serving on TEGNA's Board violates the preliminary injunction, the Court need not and does not address the parties' arguments with respect to recusal.

structure causes Nexstar to violate its obligations under the injunction by influencing management of TEGNA and accessing TEGNA's confidential information." (ECF No. 269 at 28.) Further, the Court's preliminary injunction reflects carefully revised modifications to the original TRO. The Court agrees with Plaintiffs that restraint is reflected throughout the Order, "which cautions that various carve-outs should not be used 'as a pretext to undermine TEGNA's viability as a going concern,' . . . and will apply only 'to the extent necessary to permit TEGNA to fulfill its obligations under this Order." (ECF No. 269 at 30 (citing ECF No. 172 ¶¶ 11(a), (c)).) The Court already considered this argument during the preliminary injunction hearing and rejected it. Defendants' interpretation of paragraph 11 would indeed be the exception that swallows the rule. To be clear, paragraph 11 does not permit Nexstar executives to even serve, much less dominate TEGNA's Board — even as it pertains to discharging Nexstar's "obligations required under its debt instruments." (ECF No. 172 ¶ 11(e).) As the Court has already stated above, this is not "narrowly tailored to complying with reporting requirements and avoiding breaches under debt instruments." (*Id.*)

### B. Compliance Monitoring and Discovery

The parties both request this Court establish processes for ongoing compliance monitoring and discovery disputes. Plaintiffs seek monthly compliance reports and expedited discovery on compliance with accelerated briefing schedules for any discovery disputes.[9] (ECF No. 269 at 32–34.) Defendants request appointment of a special master to oversee compliance discovery and reporting. (ECF No. 279 at 20–23.)

Courts have inherent authority to monitor and enforce compliance with their lawful orders. *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966).) Permitting compliance discovery is one such tool to aid courts in compliance and enforcement. *See id*. Additionally, a court may appoint

[9] Plaintiffs also request the Court clarify that compliance discovery not count against their merits discovery limits. (ECF No. 269 at 34.) The Court so clarifies. Plaintiffs' compliance discovery shall not count against their merits discovery limits. However, the Court may limit or restrict Plaintiffs' compliance discovery requests, should it become necessary.

a special master to perform duties consented to by the parties or to address pretrial issues that cannot be effectively and timely addressed by available judges in the district, including compliance issues. Fed. R. Civ. P. 53(1)(1); *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990) ("Masters may also be appointed because of the complexity of litigation and problems associated with compliance with the district court order."); *Stone v. City & Cnty. San Francisco*, 968 F.2d 850, 879 n.18 (9th Cir. 1992) ("Federal courts repeatedly have approved the use of special masters to monitor compliance with court orders[.]").

As discussed above, the Court has found Defendants' actions violated the preliminary injunction as clarified. Therefore, ongoing compliance monitoring and discovery is warranted in this case to ensure adherence to the preliminary injunction, particularly in light of Defendants' lack of candor. The Court is also mindful of the burden on the parties as they proceed to trial on an expedited basis (ECF No. 258) and the burden on this Court amidst a long-standing and exacerbated judicial emergency in this district.[10] To further these goals, this Court permits compliance discovery and will require ongoing compliance monitoring with the input of the parties.

<u>Discovery and Reporting</u>: Defendants must respond to Plaintiffs' outstanding compliance discovery requests and must provide Plaintiffs ordinary-course documents on a monthly basis, as ordered below. As to periodic reporting, "Defendants have already offered to provide Plaintiffs ordinary-course documents" as a less-burdensome substitute to generating new reporting materials. (ECF No. 279 at 22 (offering TEGNA board meeting minutes, changes to TEGNA budgets, and regular financial reporting presented to the TEGNA Board).) As to discovery responses, while Defendants object to "preemptively authorized [and] open-ended" compliance discovery over the course of a year (*id.* at 17–18), at this juncture, the Court orders complete responses to limited discovery — the discovery already propounded by Plaintiffs — until procedures for future compliance monitoring are in place. The Court finds these compliance tools

---

[10] *See* Eastern District of California Judicial Emergency, United States District Court for the Eastern District of California, https://www.caed.uscourts.gov/caednew/index.cfm/news/judicial-emergency/.

to be reasonable and limited in scope and burden on the parties.

Monitoring and Disputes: In addition to exchanges between the parties, the Court finds that ongoing and periodic compliance monitoring is warranted by a third party. Therefore, the parties are ordered to meet and confer to propose procedures for ongoing compliance monitoring and resolution of anticipated discovery disputes. The parties shall jointly file either a proposal for appointment of a special master as further detailed below, or a stipulation and proposed order, noticed to U.S. Magistrate Judge Carolyn Delaney, as to procedures for periodic compliance reports and expedited briefing for disputes on compliance discovery.

In light of the Court's concerns and the potential for significant damage to TEGNA as an independent entity in the face of non-compliance, the Court finds these measures are narrowly tailored, fair, and reasonable to ensure compliance with the injunction, while mitigating the burden on the parties and Court.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Clarification of the Court's Preliminary Injunction (ECF No. 269) is hereby GRANTED as follows:

1. The Court CLARIFIES that its April 17, 2026 preliminary injunction (ECF No. 172) prohibits current and former Nexstar Media Group, Inc. officers, employees, directors, consultants, or other affiliated personnel from serving on the Board of Directors for TEGNA Inc. To the extent Defendants seek to appoint an individual with a material relationship to Nexstar on TEGNA's Board, they shall first seek relief from the Court to do so;
2. Defendants shall immediately take all actions necessary to comply with the preliminary injunction as clarified in this Order. **Within ten days**, Defendants shall file a status report identifying their actions to ensure compliance with this Order;
3. **Within seven days**, Defendants shall respond to Plaintiffs' outstanding compliance discovery requests;

4. To ensure compliance with the preliminary injunction as clarified, Defendants shall provide Plaintiffs with the following documents and information **on a monthly basis**, beginning **within ten days** and continuing until final judgment:
    a. TEGNA Board Meeting Minutes;
    b. Any material changes to TEGNA budgets, forecasts, or strategic operating plans adopted or approved by TEGNA in the preceding month;
    c. Any periodic financial or operational reports (however titled or styled) presented to the TEGNA Board; and
    d. Any change in TEGNA's directors or officers.

   This paragraph does not limit the duties or scope of any future-appointed Special Master for the purpose of compliance monitoring; and

5. **Within fourteen days**, the parties shall jointly file a stipulation and proposed order for the appointment of a Special Master ("SM"), in accordance with Federal Rule of Civil Procedure 53, to oversee compliance with the preliminary injunction as clarified and any compliance discovery disputes. (In the alternative, the parties may stipulate to procedures for compliance monitoring and expedited briefing on discovery disputes before the assigned magistrate judge and shall notice such proposal to U.S. Magistrate Judge Delaney.) If the parties agree to appoint an SM, the proposal must include:
    a. SM's duties as to compliance monitoring (including monthly compliance reports) and compliance discovery disputes (on an expedited basis), scope of duties, and limits on authority;
    b. SM's reporting procedures or disclosure obligations to the Court;
    c. procedures to expedite compliance discovery disputes;
    d. procedures for objection or review of SM's determinations;
    e. SM's obligations to preserve materials and record activities;
    f. circumstances under which SM is authorized to communicate ex parte with the Court or a party;

g. the basis, terms, and procedure for fixing SM's compensation at the expense of the parties; and

h. the individual selected by the parties, including their credentials and experience. The parties shall also submit the proposed SM's disqualification affidavit in accordance with Fed. R. Civ. P. 53(b)(3). If the parties cannot agree on a selection, the parties shall jointly submit up to three candidates for the Court to consider for appointment based on relevant experience and credentials, without identifying the proposing party for any candidate.

IT IS SO ORDERED.

DATE: August 5, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE